1  KAREN P. HEWITT
   United States Attorney
2  WILLIAM A. HALL, JR.
   Assistant U.S. Attorney
3  California State Bar No. 235403
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7046/(619) 235-2757 (Fax)
   Email: william.a.hall@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                                  )    Criminal Case No. 07CR3469-H
     UNITED STATES OF AMERICA,      )
11                                  )    DATE:         January 28, 2008
                         Plaintiff, )    TIME:         2:00 p.m.
12                                  )    Before Honorable Marilyn L. Huff
              v.                    )
13                                  )
     MARIO BARRON-GALVAN,           )    UNITED    STATES'    STATEMENT    OF
14                                  )    FACTS    AND    MEMORANDUM    OF
                      Defendant(s). )    POINTS AND AUTHORITIES
15   _____ )

16                                  I

17                    **STATEMENT OF THE CASE**

18        The Defendant, Mario Barron-Galvan (hereinafter "Defendant"), was charged by a grand

19   jury on December 27, 2007, with violating 8 U.S.C. §§ 1326(a) and (b), deported alien found in

20   the United States.  Defendant was arraigned on the Indictment the same day, and entered a plea of

21   not guilty.

22                                  II

23                    **STATEMENT OF FACTS**

24        Defendant was apprehended on October 21, 2007, by a Border Patrol Agent ("BPA") in

25   Jamul, California, during the Harris Fire wildfire.  There, at approximately 5:30 p.m. that day, a

26   BPA responded to an evaluation on four individuals in San Diego Sheriff's custody at the

27

28                                  3

1  intersection of Honey Springs Road and Mother Grundy Truck Trail. The BPA identified himself

2  and individually questioned the four individuals, one of which was Defendant, concerning their

3  citizenship. There, Defendant admitted that he was a citizen of Mexico with no documents

4  entitling him to enter or remain in the United States.

5  Defendant was transported to the Brown Field Border Patrol Station's processing center.

6  At the center, BPAs used Defendant's fingerprints to perform a computerized check of Defendant's

7  criminal and immigration history.

8  **B.    DEFENDANT'S CRIMINAL AND IMMIGRATION HISTORY**

9  Preliminary criminal history reports show that Defendant has felony convictions in

10  California. Defendant was convicted in 1999 in Tulare of Assault with a Deadly Weapon, in

11  violation of Cal. PC § 245(A)(1); he was sentenced to probation, and later sentenced to one year

12  of incarceration on a probation violation. Defendant was convicted in 2001 in Tulare of Domestic

13  Violence with Corporal Injury, in violation of Cal. PC § 273.5(a), and Assault with a Deadly

14  Weapon, in violation of Cal. PC § 245(A)(1); he was sentenced four years' incarceration.

15  Defendant was also convicted in this District in 1995 of misdemeanor and felony illegal entry, in

16  violation of 8 U.S.C. § 1325; he was sentenced to two years' incarceration.

17  Defendant's was last removed to Mexico on April 12, 2007.

**III**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A.    DISCOVERY REQUESTS AND MOTION TO PRESERVE EVIDENCE**

**1.    The Government Has or Will Disclose Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure**

23  The government has disclosed, or will disclose well in advance of trial, any statements

24  subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of Defendant's oral statements

25  *in response to government interrogation*) and 16(a)(1)(B) (Defendant's relevant written or

28  4                                  07CR3469-H

1    recorded statements, written records containing substance of Defendant's oral statements *in*

2    *response to government interrogation*, and Defendant's grand jury testimony).

3               a.    The Government Will Comply With Rule 16(a)(1)(D)

4        Defendant has already been provided with his or her own "rap" sheet and the government

5    will produce any additional information it uncovers regarding Defendant's criminal record. Any

6    subsequent or prior similar acts of Defendant that the government intends to introduce under Rule

7    404(b) of the Federal Rules of Evidence will be provided, along with any accompanying reports,

8    at a reasonable time in advance of trial.

9               b.    The Government Will Comply With Rule 16(a)(1)(E)

10        The government will permit Defendant to inspect and copy or photograph all books, papers,

11    documents, data, photographs, tangible objects, buildings or places, or portions thereof, that are

12    material to the preparation of Defendant's defense or are intended for use by the government as

13    evidence-in-chief at trial or were obtained from or belong to Defendant.

14        Reasonable efforts will be made to preserve relevant physical evidence which is in the

15    custody and control of the investigating agency and the prosecution, with the following exceptions:

16    drug evidence, with the exception of a representative sample, is routinely destroyed after 60 days,

17    and vehicles are routinely and periodically sold at auction. Records of radio transmissions, if they

18    existed, are frequently kept for only a short period of time and may no longer be available.

19    Counsel should contact the Assistant United States Attorney assigned to the case two weeks before

20    the scheduled trial date and the Assistant will make arrangements with the case agent for counsel

21    to view all evidence within the government's possession.

22               c.    The Government Will Comply With Rule 16(a)(1)(F)

23        The government will permit Defendant to inspect and copy or photograph any results or

24    reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof,

25    that are within the possession of the government, and by the exercise of due diligence may become

26    known to the attorney for the government and are material to the preparation of the defense or are

27

28                          5                 07CR3469-H

1    intended for use by the government as evidence-in-chief at the trial.  Counsel for Defendant should

2    contact the Assistant United States Attorney assigned to the case and the Assistant will make

3    arrangements with the case agent for counsel to view all evidence within the government's

4    possession.

5
                    d.       The Government Will Comply With Its Obligations Under Brady v.
6                            Maryland

7            The government is well aware of and will fully perform its duty under Brady v. Maryland,

8    373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory

9    evidence within its possession that is material to the issue of guilt or punishment.  Defendant,

10   however, is not entitled to all evidence known or believed to exist that is, or may be, favorable to

11   the accused, or that pertains to the credibility of the government's case.  As stated in United States

12   v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

13           [T]he prosecution does not have a constitutional duty to disclose every bit of
             information that might affect the jury's decision; it need only disclose information
14           favorable to the defense that meets the appropriate standard of materiality.

15   611 F.2d at 774-775 (citations omitted).  See also United States v. Sukumolachan, 610 F.2d 685,

16   687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not

17   exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any

18   pretrial privileges not contained in the Federal Rules of Criminal Procedure).

19                   e.       Discovery Regarding Government Witnesses

20                           (1)       Agreements.  The government has disclosed or will disclose the

21   terms of any agreements by Government agents, employees, or attorneys with witnesses that testify

22   at trial.  Such information will be provided at or before the time of the filing of the Government's

23

24

25

26

27

28                                          6                                      07CR3469-H

1    trial memorandum.[1]/  The government will comply with its obligations to disclose impeachment

2    evidence under <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

3                  (2)      <u>Bias or Prejudice.</u>  The government has provided or will provide

4    information related to the bias, prejudice or other motivation to lie of government trial witnesses

5    as required in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959).

6                  (3)      <u>Criminal Convictions.</u>  The government has produced or will

7    produce any criminal convictions of government witnesses plus any *material* criminal acts which

8    did not result in conviction.  The government is not aware that any prospective witness is under

9    criminal investigation.

10                 (4)      <u>Ability to Perceive.</u>  The government has produced or will produce

11    any evidence that the ability of a government trial witness to perceive, communicate or tell the

12    truth is impaired or that such witnesses have ever used narcotics or other controlled substances,

13    or are alcoholics.

14                 (5)      <u>Witness List.</u>  The government will endeavor to provide Defendant

15    with a list of all witnesses which it intends to call in its case-in-chief at the time the government's

16    trial memorandum is filed, although delivery of such a list is not required.  <u>See</u> <u>United States v.</u>

17    <u>Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Culter</u>, 806 F.2d 933, 936 (9th Cir. 1986);

18    <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).  Defendant, however, is not entitled to

19    the production of addresses or phone numbers of possible government witnesses.  <u>See</u> <u>United</u>

20    <u>States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir. 1977), <u>cert. denied</u>, 419 U.S. 834 (1974).

21    Defendant has already received access to the names of potential witnesses in this case in the

22    investigative reports previously provided to him or her.

23

24 _____

25    [1]      As with all other offers by the government to produce discovery earlier than it is required

26    to do, the offer is made without prejudice.  If, as trial approaches, the government is not prepared to make early discovery production, or if there is a strategic reason not to do so as to certain discovery, the government reserves the right to withhold the requested material until the time it

27    is required to be produced pursuant to discovery laws and rules.

28

1    (6)    <u>Witnesses Not to Be Called.</u>  The government is not required to

2    disclose all evidence it has or to make an accounting to Defendant of the investigative work it has

3    performed.  <u>Moore v. Illinois</u>, 408 U.S. 786, 795 (1972); <u>see</u>  <u>United States v. Gardner</u>, 611 F.2d

4    770, 774-775 (9th Cir. 1980).  Accordingly, the government objects to any request by Defendant

5    for discovery concerning any individuals whom the government does not intend to call as

6    witnesses.

7    (7)    <u>Favorable Statements.</u>  The government has disclosed or will

8    disclose the names of witnesses, if any, who have made favorable statements concerning Defendant

9    which meet the requirements of <u>Brady</u>.

10    (8)    <u>Review of Personnel Files.</u>  The government has requested or will

11    request a review of the personnel files of all federal law enforcement individuals who will be called

12    as witnesses in this case for <u>Brady</u> material.  The government will request that counsel for the

13    appropriate federal law enforcement agency conduct such review.   <u>United States v. Herring</u>, 83

14    F.3d 1120 (9th Cir. 1996); <u>see</u>, <u>also</u>, <u>United States v. Jennings</u>, 960 F.2d 1488, 1492 (9th Cir.

15    1992); <u>United States v. Dominguez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

16    Pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) and <u>United States v.</u>

17    <u>Cadet</u>, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable

18    to the defense that meets the appropriate standard of materiality . . ."  <u>United States v. Cadet</u>, 727

19    F.2d at 1467, 1468.  Further, if counsel for the United States is uncertain about the materiality of

20    the information within its possession in such personnel files, the information will be submitted to

21    the Court for <u>in camera</u> inspection and review.

22    (9)    <u>Government Witness Statements.</u> Production of witness statements

23    is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies

24    on direct examination. <u>United States v. Taylor</u> , 802 F.2d 1108, 1118 (9th Cir. 1986); <u>United States</u>

25    <u>v. Mills</u>, 641 F.2d 785, 790 (9th Cir. 1981)).  Indeed, even material believed to be exculpatory and

26    therefore subject to disclosure under the <u>Brady</u> doctrine, if contained in a witness statement subject

27

28    8    07CR3469-H

1    to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under

2    the Act.  See United States v. Bernard, 623 F.2d 551, 556-57 (9th Cir. 1979).

3         The government reserves the right to withhold the statements of any particular witnesses

4    it deems necessary until after the witness testifies.  Otherwise, the government will disclose the

5    statements of witnesses at the time of the filing of the government's trial memorandum, provided

6    that defense counsel has complied with Defendant's obligations under Federal Rules of Criminal

7    Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse

8    Jencks" statements at that time.

9

10        f.      The Government Objects To The Full Production Of Agents' Handwritten
                  Notes At This Time

11        Although the government has no objection to the preservation of agents' handwritten notes,

12   it objects to requests for full production for immediate examination and inspection.  If certain

13   rough notes become relevant during any evidentiary proceeding, those notes will be made

14   available.

15        Prior production of these notes is not necessary because they are not "statements" within

16   the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a

17   witness' assertions *and* they have been approved or adopted by the witness.  United States v.

18   Spencer, 618 F.2d 605, 606-607 (9th Cir. 1980); see also United States v. Griffin,  659 F.2d 932,

19   936-938 (9th Cir. 1981).

20        g.      All Investigatory Notes and Arrest Reports

21        The government objects to any request for production of all arrest reports, investigator's

22   notes, memos from arresting officers, and prosecution reports pertaining to Defendant.  Such

23   reports, except to the extent that they include Brady material or the statements of Defendant, are

24   protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in

25   connection with the investigation or prosecution of the case."

26

27

28                                          9                           07CR3469-H

1   Although agents' reports may have already been produced to the defense, the government

2   is not required to produce such reports, except to the extent they contain <u>Brady</u> or other such

3   material.  Furthermore, the government is not required to disclose all evidence it has or to render

4   an accounting to Defendant of the investigative work it has performed.  <u>Moore v. Illinois</u>, 408 U.S.

5   786, 795 (1972); <u>see</u> <u>United States v. Gardner</u>, 611 F.2d 770, 774-775 (9th Cir. 1980).

6              h.     <u>Expert Witnesses</u>.

7   Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial

8   memorandum, the government will provide the defense with notice of any expert witnesses the

9   testimony of whom the government intends to use under Rules 702, 703, or 705 of the Fed. R. of

10  Evidence in its case-in-chief.  Such notice will describe the witnesses' opinions, the bases and the

11  reasons therefor, and the witnesses' qualifications.  Reciprocally, the government requests that the

12  defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

13             i.     <u>Information Which May Result in Lower Sentence</u>.

14  Defendant has claimed or may claim that the government must disclose information about

15  any cooperation or any attempted cooperation with the government as well as any other

16  information affecting Defendant's sentencing guidelines because such information is discoverable

17  under <u>Brady v. Maryland</u>.  The government respectfully contends that it has no such disclosure

18  obligations under <u>Brady</u>.

19  The government is not obliged under <u>Brady</u> to furnish a defendant with information which

20  he already knows.  <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), <u>cert. denied</u>,

21  479 U.S. 1094 (1987); <u>United States v. Prior</u>, 546 F.2d 1254, 1259 (5th Cir. 1977).  <u>Brady</u> is a rule

22  of disclosure.  There can be no violation of <u>Brady</u> if the evidence is already known to Defendant.

23  Assuming that Defendant did not already possess the information about factors which

24  might affect their respective guideline range, the government would not be required to provide

25  information bearing on Defendant's mitigation of punishment until after Defendant's conviction

26  or plea of guilty and prior to his sentencing date.  "No [<u>Brady</u>] violation occurs if the evidence is

27

28                              10                        07CR3469-H

1    disclosed to the defendant at a time when the disclosure remains of value." United States v.

2    Juvenile Male, 864 F.2d 641 (9th Cir. 1988).

3

4    **B.    THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED**

5        **1.    Introduction**

6        Defendant makes contentions relating to two separate instructions given to the grand jury

7    during its impanelment by Judge Burns on January 10, 2007. Defendant's Memorandum of Points

8    and Authorities at 4-21 (hereafter "Memorandum").[2] Although recognizing that the Ninth Circuit

9    in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the

10    two grand jury instructions constitutional, Defendant here contends that Judge Burns went beyond

11    the text of the approved instructions, and by so doing rendered them improper to the point that the

12    Indictment should be dismissed.

13        In making his arguments concerning the two separate instructions, Defendant urges this

14    Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of

15    which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992). Concerning the

16    first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its

17    supervisory powers over grand jury procedures. Memorandum at 13. This is a practice the

18    Supreme Court discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S.

19    36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it

20

21

22        [2] In making similar motions, clients of Federal Defenders, Inc. have attached a partial

23    transcript of the grand jury proceedings which records the instructions to the impaneled grand
     jurors after the voir dire had been conducted, although Defendant did not. See Exhibit A to

24    Memorandum (hereafter "Exhibit A"). Clients of Federal Defenders, Inc. have also supplied a
     partial transcript of the grand jury proceedings which records the voir dire of several potential

25    witnesses. See Exhibit B to Memorandum (hereafter "Exhibit B"). To amplify the record herein,

26    the United States is supplying a redacted supplemental transcript which records relevant portions
     of the voir dire proceedings. See Appendix to United States' Response and Opposition to

27    Defendant's Motions (hereafter "United States' Appendix").

28                                    11                            07CR3469-H

1    should come as no surprise that we have been reluctant to invoke the judicial supervisory power

2    as a basis for prescribing modes of grand jury procedure."). <u>Id</u>. <u>Isgro</u> reiterated:

3            [A] district court may draw on its supervisory powers to dismiss an
         indictment. The supervisory powers doctrine "is premised on the inherent ability
4        of the federal courts to formulate procedural rules not specifically required by the
         Constitution or Congress to supervise the administration of justice." <u>Before it may</u>
5        <u>invoke this power, a court must first find that the defendant is actually prejudiced</u>
         <u>by the misconduct.</u> Absent such prejudice – that is, absent "'grave' doubt that the
6        decision to indict was free from the substantial influence of [the misconduct]" – a
         dismissal is not warranted.

7

8    974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction,

9    in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the

10   Constitution as a reason to dismiss the Indictment. <u>See</u> Memorandum at 15 ("A grand jury so

11   badly misguided is no grand jury at all under the Fifth Amendment."). Concerning that kind of a

12   contention, <u>Isgro</u> stated:

13           [A] court may dismiss an indictment if it perceives constitutional error that
         interferes with the grand jury's independence and the integrity of the grand jury
14       proceeding. "Constitutional error is found where the 'structural protections of the
         grand jury have been so compromised as to render the proceedings fundamentally
15       unfair, allowing the presumption of prejudice' to the defendant." Constitutional
         error may also be found "if [the] defendant can show a history of prosecutorial
16       misconduct that is so systematic and pervasive that it affects the fundamental
         fairness of the proceeding or if the independence of the grand jury is substantially
17       infringed."

18   974 F.2d at 1094 (citation omitted).<u>3/</u>

19           The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

20           You cannot judge the wisdom of the criminal laws enacted by Congress,
         that is, whether or not there should or should not be a federal law designating
21       certain activity as criminal. That is to be determined by Congress and not by you.

22   408 F.3d at 1187, 1202.

23           The United States Attorney and his Assistant United States Attorneys will
         provide you with important service in helping you to find your way when

24

_____

25        <sup>3</sup> In <u>Isgro</u>, the defendants choose the abrogation of constitutional rights route when
26   asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did
     not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights
27   sufficient to support the dismissal of the indictment." (relying on <u>Williams</u>)).

28                                              12                                07CR3469-H

1    confronted with complex legal problems.   It is entirely proper that you should
     receive this assistance.  If past experience is any indication of what to expect in the
2    future, then you can expect candor, honesty, and good faith in matters presented by
     the government attorneys.

3

4    408 F.3d at 1187, 1206.

5         Concerning the "wisdom of the criminal laws" instruction, the court stated it was

6    constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the

7    policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury

8    nullification.'"[4/] 408 F.3d at 1203 (footnote omitted).  "Furthermore, the grand jury has few tools

9    for informing itself of the policy or legal justification for the law;  it receives no briefs or

10   arguments from the parties.   The grand jury has little but its own visceral reaction on which to

11   judge the 'wisdom of the law.'"  Id.

12        Concerning the "United States Attorney and his Assistant United States Attorneys"

13   instruction, the court stated:

14             We also reject this final contention and hold that although this passage may
          include unnecessary language, it does not violate the Constitution.  The "candor,
15        honesty, and good faith" language, when read in the context of the instructions as
          a whole, does not violate the constitutional relationship between the prosecutor and
16        grand jury. . . .  The instructions balance the praise for the government's attorney
          by informing the grand jurors that some have criticized the grand jury as a "mere
17        rubber stamp" to the prosecution and reminding them that the grand jury is
          "independent of the United States Attorney[.]"
18

19   408 F.3d at 1207.  Id.  "The phrase is not vouching for the prosecutor, but is closer to advising the

20   grand jury of the presumption of regularity and good faith that the branches of government

21   ordinarily afford each other."  Id.

22

23

24   _____

25        [4] The Court acknowledged that as a matter of fact jury nullification does take place, and
     there is no way to control it.  "We recognize and do not discount that some grand jurors might in
26   fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional.
     For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's
27   motives are not open to examination."  408 F.3d at 1204 (emphasis in original).

28                                        13                    07CR3469-H

1

## 2.   The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

2       Concerning whether the new grand jurors should concern themselves with the wisdom of

3   the criminal laws enacted by Congress, Judge Burns's full instruction stated:

4       You understood from the questions and answers that a couple of people were
        excused, I think three in this case, because they could not adhere to the principle
5       that I'm about to tell you.

6           But it's not for you to judge the wisdom of the criminal laws enacted by
        congress; that is, whether or not there should be a federal law or should not be a
7       federal law designating certain activity is criminal is not up to you.  That's a
        judgment that congress makes.

8
            And if you disagree with the judgment made by congress, then your option
9       is not to say "Well I'm going to vote against indicting even though I think that the
        evidence is sufficient" or "I'm going to vote in favor of even though the evidence
10      may be insufficient."  Instead, your obligation is to  contact your congressman or
        advocate for a change in the laws, but not to bring your personal definition of what
11      the law ought to be and try to impose that through applying it in a grand jury
        setting.

12

13   Exhibit A at 8-9.[5/]

14       In line with Navarro-Vargas, he instructed the grand jurors that they were forbidden "from

15   judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should

16   be a federal law or should not be a federal law designating certain activity [as] criminal is not up

17   to you."  Exhibit A at 8.  Defendant claims, however, that the instructions "make it painfully clear

18   that grand jurors simply may not choose not to indict in the event of what appears to them to be

19   an unfair application of the law: should 'you disagree with that judgment made by Congress, then

20   your option is not to say 'well, I'm going to vote against indicting even though I think that the

21   evidence is sufficient. . . .'"  Memorandum at 11.  Defendant contends that this addition to the

22   approved instruction "flatly bars the grand jury from declining to indict because the grand jurors

23

24       [5]   The United States' Appendix recounts the excusing of the three individuals.  This
         transcript involves the voir dire portion of the grand jury selection process, and has been redacted
25       to include redaction of the individual names, so as to provide only the relevant three incidents
         wherein prospective grand jurors were excused.  Specifically, the pages of the supplemental
26       transcript supplied are: United States' Appendix at 15, line 10; 17, line 18; 24, line 14; 28, line 2;
         38, line 9; and 44, line 17.
27

28                                          14                                    07CR3469-H

1    disagree with a proposed prosecution." Id.  Defendant further contends that the flat prohibition

2    was preemptively reinforced by Judge Burns when he excused prospective grand jurors.

3         In concocting his theory of why Judge Burns erred, Defendant posits that the expanded

4    instruction renders irrelevant the debate about what the word "should" means.  Memorandum at

5    11.  Defendant contends that "the instruction flatly bars the grand jury from declining to indict

6    because they disagree with a proposed prosecution."  Id.  This argument mixes-up two of the

7    holdings in Navarro-Vargas in the hope they will blend into one.  They do not.

8         Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom

9    of the criminal laws.  The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted

10   by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an

11   expression of discretion.  Jury nullification is forbidden although acknowledged as a sub rosa fact

12   in grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely within

13   his rights, and within the law, when he excused the three prospective grand jurors because of their

14   expressed inability to apply the laws passed by Congress.  Similarly, it was proper for him to

15   remind the impaneled grand jurors that they could not question the wisdom of the laws.  As we will

16   establish, this reminder did not pressure the grand jurors to give up their discretion not to return

17   an indictment.  Judge Burns's words cannot be parsed to say that they flatly barred the grand jury

18   from declining to indict because the grand jurors disagree with a proposed prosecution, because

19   they do not say that.  That aspect of a grand jury's discretionary power (i.e., disagreement with the

20   prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the

21   term "should" was germane.[6]  408 F.3d at 1204-06.  This other instruction bestows discretion on

22

23        [6] That instruction is not at issue here.  It read as follows:

24             [Y]our task is to determine whether the government's evidence as presented
             to you is sufficient to cause you to conclude that there is probable cause to believe
25           that the accused is guilty of the offense charged.   To put it another way, you
             should vote to indict where the evidence presented to you is sufficiently strong to
26           warrant a reasonable person's believing that the accused is probably guilty of the
27                                                                          (continued...)

28                                    15                    07CR3469-H

1     the grand jury not to indict.[7/]  In finding this instruction constitutional, the court stated in words

2     that ring true here: "It is the grand jury's position in the constitutional scheme that gives it its

3     independence, not any instructions that a court might offer."  408 F.3d at 1206.  The other

4     instruction was also given by Judge Burns in his own fashion as follows:

5             The function of the grand jury, in federal court at least, is to determine
        probable cause.  That's the simple formulation that I mentioned to a number of you

6        during the jury selection process.  Probable cause is just an analysis of whether a
        crime was committed and there's a reasonable basis to believe that and whether a

7        certain person is associated with the commission of that crime, committed it or
        helped commit it.

8

9             If the answer is yes, then as grand jurors your function is to find that the
        probable cause is there, that the case has been substantiated, and it should move

10       forward.  If conscientiously, after listening to the evidence, you say "No, I can't
        form a reasonable belief has anything to do with it, then your obligation, of course,

11       would be to decline to indict, to turn the case away and not have it go forward.

    Exhibit A at 3-4.
12

13             Probable cause means that you have an honestly held conscientious belief
        and that the belief is reasonable that a federal crime was committed and that the

14       person to be indicted was somehow associated with the commission of that crime.
        Either they committed it themselves or they helped someone commit it or they were

15       part of a conspiracy, an illegal agreement, to commit that crime.

16

17 _____

18     (...continued)
        offense with which the accused is charged.

19

20     408 F.3d at 1187.

21        [7] The court upheld the instruction stating:

22         This instruction does not violate the grand jury's independence.  The
        language of the model charge does not state that the jury "must" or "shall" indict,

23        but merely that it "should" indict if it finds probable cause.  As a matter of pure
        semantics, it does not "eliminate discretion on the part of the grand jurors," leaving

24        room for the grand jury to dismiss even if it finds probable cause.

25     408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir.

26     2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution
    than the executive because there is, literally, no check on a grand jury's decision not to return an

27     indictment.  408 F.3d at 1206.

28                                                  16                                    07CR3469-H

1

> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

2

3

Exhibit A at 23.

4

5          While the new grand jurors were told by Judge Burns that they could not question the

6   wisdom of the criminal laws per <u>Navarro-Vargas</u>, they were also told by Judge Burns they had the

7   discretion not to return an indictment per <u>Navarro-Vargas</u>.  Further, if a potential grand juror could

8   not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be

9   dismissed as a potential jury nullification advocate.  <u>See</u> <u>Merced v. McGrath</u>, 426 F.3d 1076, 1079-

10  80 (9th Cir. 2005).  Thus, there was no error requiring dismissal of this Indictment or any other

11  indictment by this Court exercising its supervisory powers.

12          Further, a reading of the dialogues between Judge Burns and the three excused jurors found

13  in the supplemental transcript excerpts (<u>see</u> United States' Appendix) reflects a measured,

14  thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury

15  because of their views.  Judge Burns's reference back to those three colloquies cannot be construed

16  as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their

17  duties.

18          Finally, even if there was an error, Defendant has not demonstrated he was actually

19  prejudiced thereby, a burden he has to bear.  "Absent such prejudice – that is, absent 'grave' doubt

20  that the decision to indict was free from the substantial influence of [the misconduct]' – a dismissal

21  is not warranted."  <u>Isgro</u>, 974 F.2d at 1094.

22          **3.      The Addition to the "United States Attorney and his Assistant United States
                    Attorneys" Instruction Did Not Violate the Constitution**

23

24          Concerning the new grand jurors' relationship to the United States Attorney and the

25  Assistant U.S. Attorneys, Judge Burns variously stated:

26

27

28

1            [T]here's a close association between the grand jury and the U.S. Attorney's Office.

2                 . . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

3

4 Exhibit A at 11.

5            [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the

6 grand juries.  They generally work together.

7 Exhibit A at 12.

8              Now, again, this emphasizes the difference between the function of the grand jury and the trial jury.  You're all about probable cause.  If you think that

9 there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well.  As I told

10 you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

11

12 Exhibit A at 20.[8]

13            As a practical matter, you will work closely with government lawyers.  The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services

14 and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government

15 lawyers.

16              But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone.  If past experience

17 is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that

18 they'll act in good faith in all matters presented to you.

19 Exhibit A at 26-27.

20            Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that

21 cuts against what they may be asking you to do if they're aware of that evidence," Defendant

22

23 ─────────────

24        [8] Just prior to this instruction, Judge Burns had informed the grand jurors that:

25       [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the

26 story, if there is another side to the story.

27 Exhibit A at 19.

28                      18               07CR3469-H

1   proposes that by making that statement, "Judge Burns also assured the grand jurors that

2   prosecutors would present to them evidence that tended to undercut probable cause."

3   Memorandum at 13. Defendant then ties this statement to the later instruction which "advis[ed]

4   the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will

5   be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" Id.

6   From this lash-up Defendant contends:

> These instructions create a presumption that, in cases where the prosecutor
> does not present exculpatory evidence, no exculpatory evidence exists. A grand
> juror's reasoning, in a case in which no exculpatory evidence was presented, would
> proceed along these lines:
>
> (1) I have to consider evidence that undercuts probable cause.
>
> (2) The candid, honest, duty-bound prosecutor would, in good faith,
> have presented any such evidence to me, if it existed.
>
> (3) Because no such evidence was presented to me, I may conclude
> that there is none.
>
> Even if some exculpatory evidence were presented, a grand juror would
> necessarily presume that the evidence presented represents the universe of all
> available exculpatory evidence; if there was more, the duty-bound prosecutor
> would have presented it.
>
> The instructions therefore discourage investigation – if exculpatory
> evidence were out there, the prosecutor would present it, so investigation is a waste
> of time and provide additional support to every probable cause determination: i.e.,
> this case may be weak, but I know that there is nothing on the other side of the
> equation because it was not presented. A grand jury so badly misguided is no
> grand jury at all under the Fifth Amendment.

19  Memorandum at 15.[9]

21  Frankly, Judge Burns's statement that "the U.S. Attorneys are duty-bound to present

22  evidence that cuts against what they may be asking you to do if they're aware of that evidence,"

---

[9] The term "presumption" is too strong a word in this setting. The term "inference" is
more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are
(1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive
presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing
Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster
County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25
F.3d 890, 897 (9th Cir. 1994).

28                                          19                                  07CR3469-H

1    is directly contradicted by <u>United States v. Williams</u>, 504 U.S. 36, 51-53 (1992) ("If the grand jury

2    has no obligation to consider all '<u>substantial</u> exculpatory' evidence, we do not understand how the

3    prosecutor can be said to have a binding obligation to present it."[10/]  (emphasis added)).  <u>See also</u>

4    <u>United States v. Haynes</u>, 216 F.3d 789, 798 (9th Cir.  2000) ("Finally, their challenge to the

5    government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because

6    prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury."

7    (citing <u>Williams</u>) (emphasis added)).

8        However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge

9    Burns was a member of the United States Attorney's Office, and made appearances in front of the

10   federal grand jury.[11/]  As such he was undoubtedly aware of the provisions in the United States

11   Attorneys' Manual ("USAM").[12/]  Specifically, it appears he was aware of USAM Section 9-

12   11.233, which states:

13           In <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992), the Supreme Court
             held that the Federal courts' supervisory powers over the grand jury did not include
14

---

15       [10]  Note that in <u>Williams</u> the Court established:

16

17           Respondent does not contend that the Fifth Amendment itself obliges the
             prosecutor to disclose substantial exculpatory evidence in his possession to the
18           grand jury.  Instead, building on our statement that the federal courts "may, within
             limits, formulate procedural rules not specifically required by the Constitution or
19           the Congress,"  he argues that imposition of the Tenth Circuit's disclosure rule is
             supported by the courts' "supervisory power."
20

21   504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no
     authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent
22   supervisory authority over their own proceedings."  504 U.S. at 55.  <u>See also</u> <u>United States v.</u>
     <u>Haynes</u>, 216 F.3d 789, 797-98 (9th Cir.  2000).  However, the Ninth Circuit in <u>Isgro</u> used
23   <u>Williams</u>' holding that the supervisory powers would not be invoked to ward off an attack on
     grand jury procedures couched in constitutional terms.  974 F.2d at 1096.
24

25       [11]  He recalled those days when instructing the new grand jurors.  Exhibit A at 12, 14-16,
     17-18.
26

27       [12]   The USAM is available on the World Wide Web at <u>www.usdoj.gov/usao/</u>
     <u>eousa/foia_reading_room/ usam/index.html</u>.

28                                  20                           07CR3469-H

the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the <u>policy</u> of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of <u>substantial evidence that directly negates the guilt</u> of a subject of the investigation, the prosecutor <u>must</u> present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should <u>not result in dismissal of an indictment</u>, appellate courts <u>may refer violations of the policy to the Office of Professional Responsibility</u> for review.

(Emphasis added.)[13/] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose '<u>substantial evidence</u> that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, <u>see</u> USAM § 9-11.233 ." (Emphasis added.)[14/]

The facts that Judge Burns's statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because

[13] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the Internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[14] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶"E". See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm. htm.

07CR3469-H

1    no "substantial" exculpatory evidence exists.[15]/  If it does exist, as mandated by the USAM, the

2    evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of

3    possibly having his or her career destroyed by an Office of Professional Responsibility

4    investigation.  Even if there is some nefarious slant to the grand jury proceedings when the

5    prosecutor does not present any "substantial" exculpatory evidence, because there is none, the

6    negative inference created thereby in the minds of the grand jurors is legitimate.  In cases such as

7    Defendant's, the Government has no "substantial" exculpatory evidence generated from its

8    investigation or from submissions tendered by the defendant.[16]/  There is nothing wrong  in this

9    scenario with a grand juror inferring from this state-of-affairs that there is no "substantial"

10   exculpatory evidence, or even if some exculpatory evidence were presented, the evidence

11   presented represents the universe of all available exculpatory evidence.

12           Further, just as the instruction language regarding the United States Attorney attacked in

13   Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution,"

14   408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand

15   jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys,

16   and does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the

17   Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which

18

19           [15]  Recall Judge Burns also told the grand jurors that:

20

21               [T]hese proceedings tend to be one-sided necessarily. . . . Because
                 it's not a full-blown trial, you're likely in most cases not to hear the
22               other side of the story, if there is another side to the story.

23   Exhibit A at 19.

24           [16]  Realistically, given "that the grand jury sits not to determine guilt or innocence, but to
     assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable
25   cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)),
     no competent defense attorney is going to preview the defendant's defense story prior to trial
26   assuming one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury
27   will be few and far between.

28                                              22                          07CR3469-H

1    requires a prosecutor to give the person under investigation the right to present anything  to the

2    grand jury (including his or her testimony or other exculpatory evidence), and the absence of that

3    information does not require dismissal of the indictment.  974 F.2d at 1096 ("<u>Williams</u> clearly

4    rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations.").

5    That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory

6    evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from

7    reaping any benefits from the self-imposed policy.<u>17/</u>  Therefore, while the "duty-bound" statement

8    was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors

9    of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions

10   which requires dismissal of the indictment in this case or any case.  The grand jurors were

11   repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys,"

12   which was authorized by <u>Navarro-Vargas</u>.  408 F.3d at 1206-07 ("laudatory comments . . . not

13   vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that it stands

14   between the government and the accused and is independent," which was also required by

15   <u>Navarro-Vargas</u>.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does

16   not mean the instructions were constitutionally defective requiring dismissal of this indictment or

17   any indictment.

18        The "duty bound" statement constitutional contentions raised by Defendant do not indicate

19   that the "'structural protections of the grand jury have been so compromised as to render the

20   proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and

21   "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and

22   pervasive that it affects the fundamental fairness of the proceeding or if the independence of the

23   grand jury is substantially infringed."  <u>Isgro</u>, 974 F.2d at 1094 (citation omitted).  Therefore, this

24   Indictment, or any other indictment, need not be dismissed.

25   _____

26        17  The apparent irony is that although an Assistant U.S. Attorney will not lose a case for
     failure to present exculpatory information to a grand jury per <u>Williams</u>, he or she could lose his
27   or her job with the United States Attorney's Office for such a failure per the USAM.

28                                        23                    07CR3469-H

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.    THE INDICTMENT SHOULD NOT BE DISMISSED FOR FAILURE TO ALLEGE "ESSENTIAL ELEMENTS"**

### 1.    Knowledge Need Not Be Charged in the Indictment

Defendant argues that the Indictment is defective and must be dismissed in that it fails to allege that Defendant (1) knew he was in the United States, (2) failed to undergo inspection and admission by an immigration officer, and (3) that he voluntarily entered the United States.  As Defendant acknowledges, these same arguments were soundly rejected by the Ninth Circuit in United States v. Rivera-Sillas, 417 F.3d 1014 (9th Cir. 2005). Defendant also makes the unsupported argument that the Indictment must allege that Defendant knew he was an alien at the time he entered the United States.

As an initial matter, the Government need only prove that Defendant was in fact an alien. See Committee on Model Criminal Jury Instructions - Ninth Circuit, Manual of Model Jury Instructions for the Ninth Circuit, §9.5B (West ed. 2003, modified January 2007).  Defendant has cited no authority for the proposition that the Government must also prove that Defendant subjectively knew his alienage.  If the Government is not required to prove Defendant's knowledge of his alienage at trial, it goes without saying that the Government need to allege Defendant's knowledge of his alienage in the charging document.

Defendant's citation to United States v. Salazar-Gonzalez, 458 F.3d 851 (9th Cir. 2006) is misplaced, as that case dealt not with the sufficiency of the indictment, but rather with the proper jury instructions. Id. at 855.  Defendant's citation to United States v. Staples, 511 U.S. 600 (1994), is inapposite for the same reason.  Both cases dealt with the need to establish *mens rea* to obtain a conviction, but neither case held that the *mens rea* requirement needs to be alleged in the charging

document.

In Rivera-Sillas (which the court in Salazar-Gonzalez cited with approval), the court held that a "found in" offense under 8 U.S.C. § 1326 is a general intent crime.  417 F.3d at 1020.  The

24                                    07CR3469-H

1   court further found that an indictment that alleges that the defendant is "a deported alien

2   subsequently found in the United States without permission suffices [to allege general intent].'"

3   Id. (citations omitted).  This holding is in line with long-standing precedent that a charging

4   document is generally sufficient if it sets forth in the words of the statute itself.  See Hamling v.

5   United States, 418 U.S. 87, 117 (1974); United States v. Musacchio, 968 F.2d 782, 787 (9th Cir.

6   1991).  Accordingly, Defendant's motion to dismiss for failure to allege "knowledge" in the

7   Indictment should be denied.

8              **2.    There Was No Violation of the Fifth Amendment Presentment Clause**

9              Defendant also argues that the Indictment is defective because it does not allege a

10  deportation date or a temporal relationship to his removal.  Defendant acknowledges, however, that

11  the Indictment specifically alleges that Defendant "was removed from the United States subsequent

12  to" September 19, 2005.  This date is subsequent to Defendant's aggravated felony conviction and

13  prior to his "found in" date of October 21, 2007, as charged in the Indictment.  Nevertheless,

14  Defendant argues that the Indictment violates his rights under the Fifth Amendment's Presentment

15  Clause in two ways: (1) that there is no indication that the grand jury "was charged with the legal

16  meaning of the word 'removal'. . .as opposed to being simply removed from the United States in

17  the colloquial sense; and (2) that the Government may at trial rely on a deportation that was never

18  presented to, or considered by, the grand jury.  Defendant's claims lack merit.

19             The Court should deny Defendant's motion to dismiss the indictment based on his

20  speculation regarding the adequacy of the instructions to the grand jury regarding legal terms such

21  as "removal" or "deportation."  The U.S. Supreme Court has held that the Fifth Amendment right

22  not to be tried for a crime not presented to a grand jury is triggered by "only a defect so

23  fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer

24  to be an indictment."  Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989).  If a

25  grand jury should ever return a true bill when there is insufficient evidence, the greatest safeguard

26

27

28                                          25                        07CR3469-H

1    is the petit jury and the rules governing its determination of guilty.  See Sears, Roebuck & Co., 719

2    F.2d at 1392.

3         In United States v. Kenny, 645 F.2d 1323 (9th Cir. 1981), cert. denied, 452 U.S. 920

4    (1981), the Court rejected the defendant's request to dismiss the indictment on the basis of his

5    allegation that the grand jury returned a true bill without any instruction on the applicable law.

6    The Court stated that it was "not persuaded that the Constitution imposes the additional

7    requirement that grand jurors receive legal instructions" and warned that "the giving of such

8    instructions portends protracted review of their adequacy and correctness." Id. at 1347.  In this

9    case, Defendant seeks to accomplish precisely what Kenny feared.  Namely, he wishes for this

10   Court to review the adequacy and correctness of any instruction to the grand jury.

11        The Court cannot do so.  This is particularly true considering that even if there was

12   evidence — rather than merely Defendant's speculation — that the grand jury was not instructed

13   on an element of the offense, this would not be sufficient grounds to compel the dismissal of the

14   indictment.  See Wright, 667 F.2d at 796 (holding that erroneous grand jury instructions do not

15   automatically invalidate an otherwise proper indictment); United States v. Larrazolo, 869 F.2d

16   1354, 1359 (9th Cir.1989), overruled on other grounds by Midland Asphalt, 489 U.S. at 799-800

17   (concluding that even if the grand jury instructions were erroneous, the defendant failed to show

18   that he was prejudiced).

19        In the same vein, there is no basis for Defendant to argue that the Government might try

20   to offer evidence of a removal that differs from the one presented to the grand jury, much less that

21   this would be improper. Any argument that the Indictment should be dismissed on this basis is

22   wholly undermined by the fact that the United States often presents evidence in § 1326

23   prosecutions of multiple deportations.  See United States v. Martinez-Rodriguez, 472 F.3d 1087,

24   1092 (9th Cir. Jan 3, 2007), as amended (stating that "the government was entitled to introduce

25   evidence of both deportations to hedge the risk that the jury may reject the offered proof of one

26   deportation, but not the other").  This longstanding practice belies Defendant's claim that the

27

28                                        26                      07CR3469-H

1    Government is limited to proving one deportation and that this particular deportation must be

2    presented to the grand jury.

3    More importantly, the remedy for Defendant's alleged problem is not to dismiss the indictment.

4    An accused's *only* cognizable interest in grand jury proceedings — and thus the *only* interest that

5    courts can vindicate by dismissing an indictment on constitutional grounds — is the right to have

6    a legally constituted grand jury make an informed and independent evaluation of the evidence to

7    determine if there is probable cause to believe him guilty of a crime.  United States v. Sears,

8    Roebuck & Co., 719 F.2d 1386, 1392 n.7 (9th Cir. 1983) (citing United States v. Wright, 667 F.2d

9    793, 796 (9th Cir. 1982)).  The defendant must show that the prosecutor's conduct was "so

10   flagrant" that it deceived the grand jury in a significant way, thereby infringing on its ability to

11   exercise independent judgment.  See Wright, 667 F.2d at 796.

12          Defendant has not and cannot allege prosecutorial misconduct.  Furthermore, from the face

13   of the Indictment, the grand jury found probable cause to believe that Defendant was removed from

14   the United States subsequent to September 19, 2005.  Such a finding is sufficient to satisfy the

15   requirements of United States v. Covian- Sandoval, 462 F.3d 1070 (9th Cir. 2006), and must

16   necessarily suffice to satisfy the Presentment Clause.  As previously stated, Defendant does not

17   and cannot credibly allege that the Government attempted to mislead the grand jury.  Furthermore,

18   there is no basis to suppose that the grand jury was impaired in its ability to independently evaluate

19   the evidence.  Because Defendant has nothing but pure speculation to support his motion to

20   dismiss, it should be denied.

21          **3.    The Indictment Need Not Allege a Prior Conviction**

22          Defendant concludes by arguing that the Indictment needs to allege that Defendant suffered

23   a prior conviction.  This is an interesting argument because the Government is quite certain

24   Defendant would strenuously object if the Government had specified Defendant's prior convictions

25   in the charging document.  In any case, Defendant again admits that his argument is foreclosed by

26   Ninth Circuit precedent in United States v. Covian-Sandoval, 462 F.3d 1090, 1096-98 (9th Cir.

27

28                                          27                          07CR3469-H

1    2006) (holding that the fact of a prior conviction need not be submitted to the jury) and United

2    States v. Salazar-Lopez, 506 F.3d 748, 752 (9th Cir. 2007) (holding that "the date of the removal,

3    *or at least the fact that [defendant] had been removed after his conviction*, should have been

4    alleged in the indictment and proved to the jury") (emphasis added). Defendant's motion to dismiss

5    on this ground should be denied.

6    **D.     THE INDICTMENT DOES NOT CONTAIN SURPLUSAGE**

7            Defendant's final argument, essentially, is that any portion of the Indictment that does not

8    strictly recite what he believes are the elements of § 1326 should be stricken as surplusage.

9    Although Defendant does not cite to Rule 7(d) of the Federal Rules of Criminal Procedure,

10   Defendant apparently wishes for the Court to strike the Government's allegation that he was

11   removed subsequent to September 19, 2005.  The Court should decline Defendant's request.

12           "The purpose of a motion to strike under Fed. R. Crim. P. 7(d) is to protect a defendant

13   against 'prejudicial or inflammatory allegations that are neither relevant nor material to the

14   charges.'" United States v. Terrigno, 838 F.2d 371, 373 (9th Cir. 1988) (quoting United States v.

15   Ramirez, 710 F.2d 535, 544-55 (7th Cir. 1983)).  However, even if facts contained in an

16   indictments allegations are prejudicial, they should not be stricken if they are material and relevant

17   to the charges.  Id.

18           The date of Defendant's removal is material and relevant to the charge under § 1326.

19   Although the Government need not take the position that United States v. Covian-Sandoval, 462

20   F.3d 1090 (9th Cir. 2006) engrafted a new element onto § 1326, the date of Defendant's

21   deportation in relation to his prior conviction is relevant for sentencing purposes under § 1326(b).

22   Defendant's *own pleadings* maintain that Covian-Sandoval requires the Government to prove that

23   he was removed subsequent to a conviction in order to trigger the enhanced statutory maximum

24   contained in § 1326.   As such, the fact that Defendant was deported after the date of his

25   aggravated felony is the "functional equivalent" of an element under § 1326.  See United States

26   v. Minore, 292 F.3d 1109, 1116-17 (9th Cir. 2002) (drugs case); United States v. Buckland, 289

27

28                                              28                          07CR3469-H

1    F.3d 558, 564-68 (9th Cir. 2002) (en banc) (same).  Therefore, this date should be submitted to the

2    jury.  See Buckland, 289 F.3d at 568 (holding that material facts increasing sentence should be

3    submitted to jury).  The allegation is neither prejudicial nor inflammatory, and thus Defendant's

4    request to strike the allegation should be denied.

5    **E.    NO OPPOSITION TO LEAVE TO FILE FURTHER MOTIONS**

6         The United States does not object to the granting of leave to allow Defendant to file further

7    motions, as long as the order applies equally to both parties and additional motions are based on

8    newly discovered evidence or discovery provided by the United States subsequent to the instant

9    motion at issue.

10                                        **IV**

11                                  **CONCLUSION**

12         For the foregoing reasons, the government respectfully requests that Defendant's motions,

13   except where not opposed, be denied.

15         DATED: January 22, 2008.

16                                   Respectfully submitted,

17                                   KAREN P. HEWITT
                                     United States Attorney
18

19                                   s/ William A. Hall, Jr.
                                     WILLIAM A. HALL, JR.
20                                   Assistant United States Attorney

29                                                        07CR3469-H